SHORES, Justice.
This appeal is from a decree of the Circuit Court of Houston County ordering the executors of the estate of Travis Mixon, III, to pay to his widow, Flora Pauline Mixon (hereinafter referred to as Pauline Mixon or the widow), the reasonable rental value of property assigned to her as dower and homestead. The appeal follows many years of litigation involving this estate and the estate of Travis Mixon, Jr. The facts are as follows:
Travis Mixon, Jr., died intestate in 1967, leaving his wife, Louise Cobb Mixon Byars, and two adult children, Travis Mixon, III, and Katrina Mixon Wilder. On March 22, 1970, before dower was assigned to Mixon, Jr.’s widow, Louise Byars, his son, Travis Mixon, III, died. Travis Mixon, III, was survived by his wife, his sister, a niece, three nephews, and his mother. By his will, he left all of his property, including the interest he had acquired in his father’s estate by intestate succession, to his sister, for life, the remainder in fee simple to her children, his three nephews and niece. His widow timely dissented from the will.
Pauline Mixon filed her original complaint in 1971, against the persons named in her husband’s will, the executors of his estate, and his mother, individually and as administratrix of the estate of his father. Thomas Wilder, husband of Katrina Wilder, was later added as a defendant. As amended, the complaint sought:
(1) assignment of a homestead;
(2) assignment of dower by metes and bounds;
(3) the net rents and profits actually received by defendants on the dower property from the date of her husband’s death to the date dower was set aside;
(4) the net rents and profits actually received by defendants on the homestead property from the date of her husband’s death to the date the homestead property was set aside;
(5) reasonable rental value for actual personal use of the dower property by defendants for their own personal use;
(6) $2,000.00 exemption, pursuant to § 6-10-64, Ala.Code 1975 (plaintiff held not entitled to this).
Coincident to this litigation, the estate of Travis Mixon, Jr., was the subject of litigation in federal and state courts. None of that litigation is related to this case, except to the extent that it accounts for much of the delay involved in assigning the dower of Pauline Mixon.
A trial was held in this case on the widow’s complaint to collect the net rents and profits and reasonable rental value of the dower property. The trial court’s judgment was for the widow. Among the court’s findings were:
“(11) That net rents and profits actually collected and received by the Defendant, Louise C. Mixon, individually and as Administratrix of the Estate of Travis Mixon, Jr., deceased, over the period of time from Plaintiff’s husband’s death until the assignment of Plaintiff’s dower, plus interest, is in the sum of $16,602.35, for which rents and profits it appears have been previously accounted for and disbursed to the Executors of the Last Will and Testament of Travis Mixon, III, deceased.
“(12) That additional net rents and profits actually collected and received by the Defendants, Katrina Mixon Wilder, James Travis Mixon, and T.W. Wilder, IV, individually, and as Co-Executors of the Estate of Travis Mixon, III, over the period of time from Plaintiff’s husband’s death until the setting aside of the homestead property to her and until the as *924 signment of her dower, plus interest, is in the sum of $38,585.21.
“(13) That the reasonable rental value for the actual personal use of the dower property by the Defendant, T.W. Wilder, for his own benefit over the period of time from Plaintiffs husband’s death until the assignment of Plaintiff’s dower, less costs expended in improving the dower property, plus interest, is in the sum of $32,470.38.
“(14) That Plaintiff is entitled to net rents and profits actually received by the Defendants over the period of time from Plaintiff’s husband’s death until the assignment of Plaintiff’s dower. Hale v. Cox, 240 Ala. 622, 200 So. 772.
“(15) That Plaintiff is entitled to the reasonable rental value for any actual personal use of the dower property by the Defendants for their own benefit over the period of time from Plaintiff’s husband’s death until the assignment of her dower, less costs expended in improving the dower property. Webb v. Webb, 250 Ala. 194, 33 So.2d 909.
“(16) That Plaintiff is entitled to net rents and profits actually received by the Defendants over the period of time from Plaintiff’s husband’s death until the setting aside of the homestead property to her. Hale v. Cox, supra.”
The first issue before us is whether the widow is entitled to the reasonable rental value of her dower property which was farmed by Thomas Wilder for about four years immediately prior to the assignment of her dower. The widow argues that as soon as her dower is assigned, her rights in the dower property vest and relate back to the date of her husband’s death. She relied on Hale v. Cox, 240 Ala. 622, 200 So. 772 (1941), as support for her claim for reasonable value for use of the property by Thomas Wilder. In that case, the Court said:
“Before dower is assigned, she [the widow] has no standing at law to a share of the rents on lands in which she has such right. Bettis v. McNider, 137 Ala. 588, 34 So. 813, 97 Am.St.Rep. 59. But such right is available in equity, after the dower has been assigned, extending back to the date of the death of her husband. [Citations omitted.]
[[Image here]]
“... The only theory on which equity will award her such rents for a period prior to the time when the dower is assigned is that she thereby has become the owner of that so assigned, as of the date of her husband’s death. Being the owner, the right to rents is an incident.”
Hale v. Cox, 240 Ala. at 626, 627, 200 So. at 775, 776.
The appellants concede that Hale v. Cox, supra, is a sound basis for awarding net rents and profits actually received by them, but argue that there is no legal basis for awarding the widow an amount based upon the reasonable rental value of the property, where there were no rents or profits. We agree.
The widow’s right to dower is only an equity or chose in action until dower is assigned to her by the court. Aniton v. Robinson, 273 Ala. 76, 134 So.2d 764 (1961). The widow does not receive a property interest in her husband’s lands automatically upon his death. She becomes vested of a life estate only upon confirmation of the assignment of dower by the court. Taylor v. United States, 388 F.2d 849 (5th Cir.1967); Gillian v. Gillian, 340 So.2d 785 (Ala.1976); Aniton v. Robinson, supra; Ala.Code § 43-5-48 [repealed 1982, but effective as to wills of persons dying before January 1, 1983, Ala.Code § 43-8-8 (1982) ]. Until the date of the assignment of dower, she has no right “to enter and occupy any part of her deceased husband’s estate or to retain possession thereof as against the heirs or those claiming under them.” G. Thompson, Commentaries on the Modern Law of Real Property § 1919 (1979 Repl.). See Lester v. Stroud, 212 Ala. 635, 103 So. 692 (1925); Hays v. Lemoine, 156 Ala. 465, 47 So. 97 (1908). However, in Alabama, the widow does have a statutory right of quarantine. This is strictly limited to “the dwelling house where her husband most usually resided *925 next before his death, with the offices and buildings appurtenant thereto and the plantation connected therewith.” Ala.Code 1975, § 43-5-40 [repealed 1982, current statute Ala.Code § 43-8-110 (1983 Repl.)].
The immediate right to use and occupy the testator’s lands, except the last regular residence of the testator, belongs to the devisee. The property interest of the devisee vests immediately upon the death of the testator, subject only to be intercepted for purposes of administration and dower, if any. Murphy v. Vaughan, 226 Ala. 461, 147 So. 404 (1933); Lester v. Stroud, supra; 96 C.J.S. Wills § 1099 (1957).
In this case, the evidence shows that Thomas Wilder, husband of the life beneficiary and father of the remainder persons under the will, farmed portions of the dower property from 1975 until the dower was assigned in 1978. (From 1970 to 1975, the property was rented to outsiders.) The land was farmed under the name of Tom-Kat Farms. Under this name, Thomas Wilder managed and farmed all of his wife’s property and their jointly held property. Substantial improvements to and expenses for maintenance of the dower property were charged to Tom-Kat Farms. The annual profit or loss on the dower property was combined with the net profits and losses for all of Tom-Kat Farms and reported on the personal income tax return of Thomas and Katrina Wilder.
Clearly, Thomas Wilder was not farming the dower property for the benefit of the estate. The facts that the land was farmed under Tom-Kat Farms, and no expenses, profits, or losses were ever charged to the estate, bears this out. Furthermore, there was no evidence that Thomas Wilder was farming the land for his personal benefit, but the evidence indicates he was acting for Katrina Wilder and was maintaining the land for her benefit and for the benefit of his children, who were the remainder persons. He managed all of his wife’s property and, because she had a life estate in this property, he cared for this land just as he did all her other lands already included in Tom-Kat Farms at that time. There was no evidence of mismanagement. The farming operation simply failed to make a profit in the years involved.
The estate of Travis Mixon, III, was intermingled with the estate of Travis Mix-on, Jr. Dower for Pauline Mixon could not be assigned until dower for Louise Byars had been confirmed. Louise’s dower was set aside in 1975, and Pauline’s was set aside in 1978. It was impossible to determine ahead of time what property would be assigned as dower for either widow. In the meantime, Katrina Wilder, as life tenant, personally or acting through an agent, had the right to use, occupy, and farm all of the land of which she was vested immediately upon the death of Travis Mixon, III. Murphy v. Vaughan, supra; Lester v. Stroud, supra. Of course, all the lands of Travis Mixon, III, were subject to dower, but the life tenant was not required to restrict her use of the land because of the possibility that some of it might later be set aside for dower. However, when land she was using was included in the dower, she was required to relinquish her possession and control to the widow as of the date of the assignment. This she did.
We know of no law that a devisee with full legal right to possess land in her own right must pay for the reasonable rental value of such land for the use thereof to one who had no simultaneous right to use and possession. We hold that the trial court erred in ordering the appellants to pay the widow the reasonable rental value of the land for the use of it by Katrina Wilder. Specifically, we reverse as to the trial court’s findings numbered 13 and 15, reprinted above. Webb v. Webb, 250 Ala. 194, 33 So.2d 909 (1948), does not support the trial court’s conclusion.
Webb v. Webb involved a case brought by the executor/beneficiary and two other beneficiaries under the will against the estate of the preceding executor, who was also a beneficiary, to contest the report for final settlement filed by the administratrix of the estate of the preced *926 ing executor. The plaintiffs sought, among other things, the rental value of property of the first estate used by the deceased executor for his personal benefit. The trial court held, and this Court affirmed its holding, that the deceased executor’s estate was liable. This case is distinguishable because it was a suit brought by the beneficiaries against, essentially, the executor to recover the rental value of estate property which he devoted to his personal use during his administration. There is a fiduciary relationship between an executor and the beneficiaries, Amos v. Toolen, 232 Ala. 587, 168 So. 687 (1936), which does not exist between a doweress and devisee, and which requires the executor to act in accord with the trust, confidence, and faith reposed in him.
The only other issue before us on this appeal concerns the trial court’s finding that the executors of Travis Mixon’s estate actually received $38,585.21 in net rents and profits from the widow’s dower and homestead properties prior to the dates such properties were set aside to her. (See findings numbered 12, 14, and 16.) The appellants concede that the widow is entitled to such rents and profits on the authority of Hale v. Cox, supra. Their only dispute is that the evidence does not support the finding that the amount actually collected and received is $38,585.21.
The trial court made no specific reference to any evidence in support of its written finding that the amount of rents collected equalled $38,585.21. We have examined the entire record and are unable to determine what figures and computations were used by the trial court to arrive at this figure. There is conflicting evidence as to how much money was collected as rent on the properties in question, and how much was expended by the executors in improving and maintaining the properties. In Gulf Coast Fabricators, Inc. v. Mosley, 439 So.2d 36 (Ala.1983), the trial court also awarded damages without setting out specific findings of fact following an ore tenus hearing. In affirming that court, we stated:
“On appeal from a judgment entered without any specific findings of fact, we assume that the trial court’s judgment is based upon facts appearing in the record. The evidence below clearly supports the judgment of the court. We are, therefore, compelled to affirm. Thomas v. Davis, 410 So.2d 889 (Ala.1982); O’Connor v. Rabren, 373 So.2d 302 (Ala.1979).
“This case was tried without a jury. Conflicting evidence was taken orally, through numerous exhibits and also by the admission of relevant parts of the deposition of Buddy Lowe. It is well settled that:
“ ‘When a trial court makes findings of fact based on evidence presented ore tenus, those findings of fact will not be disturbed on appeal unless clearly erroneous or manifestly unjust, and this rule is especially applicable in cases in which the trial court makes its findings of fact after hearing conflicting evidence; every presumption will be indulged in favor of the court’s findings, and those findings will not be disturbed unless palpably wrong. Leslie v. Pine Crest Homes, Inc., 388 So.2d 178 (Ala.1980).’ ”
439 So.2d at 39.
Accordingly, we affirm the trial court’s ' finding that the net amount of rents collected was $38,585.21, as we cannot say that the finding is clearly erroneous or manifestly unjust.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
TORBERT, C.J., and MADDOX, JONES and BEATTY, JJ., concur.